JOHNNY WATTS v. THE STATE.

No. 549. Decided March 1, 1911.

Rehearing Denied March 29, 1911.

**1.—Poll Tax—Elections—Constitutional Law—Title of Act—One Subject.**

The Act of the Legislature commonly called the Terrell Election Law, is constitutional, and the title of said Act does not embrace more than one subject, which is to regulate elections; and every clause in said Act relates in some manner to the mode and method of finally securing a fair and impartial election. Following Solon v. State, 54 Texas Crim. Rep., 261,

**2.—Same—Right of Contract—Reasonable Legislation.**

Section 170 of the Act of 1905, providing a penalty for anyone who knowingly loans another money to be used for paying the poll tax of such other person, is constitutional, and is not an unreasonable abridgment of the right of the citizen to contract, and does not contravene section 19 of the Bill of Rights of the Constitution of Texas or section 1 of article 14 of the Constitution of the United States. Davidson, Presiding Judge, dissenting.

Appeal from the County Court of Tarrant. Tried below before the Hon. John L. Terrell.

Appeal from a conviction of unlawfully loaning money to another to pay the latter's poll tax; penalty, a fine of $200.

The evidence showed that the State's witness had borrowed from the defendant $1.75 in money with which to pay his poll tax. The way defendant happened to loan the State's witness this money was as follows: They were standing on the street talking and defendant asked the State's witness if he had paid his poll tax, which witness answered in the negative; that defendant then asked why did he not do so, that there was but one more day left to pay it in, whereupon witness said he had no money; that defendant then said he would loan him enough money to pay his poll tax, which he proceeded to do. Defendant did not deny that he had done so, and this seemed to have been the only money he loaned to anyone for the purpose of paying poll tax.

*Parker & Parker* and *George G. Clough,* for appellant.—Upon the question of the title of the Act containing more than one subject and unconstitutionality of same: Sutherland on Statutory Construction, vol. 2, secs. 268-378, and also secs. 422, 443 and 485; Wallis v. Williams, 110 S. W. Rep., 785; McCormick v. Jester, 115 S. W. Rep., 278.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was charged in the County Court of Tarrant County by complaint and information with the offense of unlawfully, wilfully, corruptly and knowingly loaning and advancing to another $1.75 in money to be used and was used for paying the State and county poll tax, the defendant then and there knowing that the money was to be used for that purpose.

It is urged by appellant that the Act of the Legislature, commonly called the Terrell election law, is unconstitutional, for the reason that the same embraces more than one subject, and said Act is invalid because the same is not fairly embraced in the title thereof, and is too general.

The title of the Act reads as follows: "An Act to regulate elections and to provide penalties for its violation." As has been said by this court in a former opinion, the intention and object of this law is to establish a system which would throw all possible safe-

guards around elections, punish fraud, avoid corruption, and guarantee a pure ballot and a fair count. There is no provision of the law that does not relate to some step leading up to what the Legislature believed would have a tendency to purify our elections and secure a fair count and proper enunciation of the results of an election. The one subject is "elections" and all the various provisions relate to this subject, and the law does not contain but one "subject" as we understand it. In the case of Floeck v. State, 34 Texas Crim. Rep., 314, this court says:

"In English v. The State, 7 Texas Crim. App., 171, the constitutionality of section 21 of the Act of August 23, 1876, was before the court. Said Act was captioned 'An Act regulating elections.' Section 21 related to the closing of liquor shops during the day of any election, by order of the judges of the election, and also imposed penalties on vendors of liquors in violation of its provisions. The court held that said section was not in contravention of the Constitution, requiring the caption of the Act to embrace the subject matter thereof. Ex parte Mabry, 5 Texas Crim. App., 93; Johnson v. The State, 9 Texas Crim. App., 249; Railway v. Smith County, 54 Texas, 1; Railway v. Odum, 53 Texas, 343. Judge Cooley (Constitutional Limitations, p. 172), says: 'The generality of a title is no objection to an Act, so long as it is not made a cover to legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection. The Legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title defining it. . . . There has been a general disposition to construe the constitutional provision liberally, rather than embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of beneficial purposes for which it has been adopted.' Id., p. 175. And see notes citing cases."

This holding is approved in Albrecht v. State, 8 Texas Crim. App., 216, holding "bell-punch law" constitutional; Johnson v. State, 9 Texas Crim. App., 249, holding constitutional Act of 1876, where all provisions are germane to title; Board of Medical Examiners v. Fowler, 50 La. Ann., 1358, 24 So., 809, holding constitutional Act containing provisions for its enforcement, though title shows only general purpose, and in Montclair v. Ramsdell, 107 U. S., 147 (27 Law Ed., 431), Mr. Justice Harlan, in rendering the opinion, holds:

"The purpose of this constitutional provision was declared by the Supreme Court of New Jersey, in State v. Town of Union, 33 N. J. L., 350, to be 'To prevent surprise upon legislators by the passage of bills, the object of which is not indicated by their titles, and also to prevent the combination of two or more distinct and unconnected matters in the same bill.' Further, said the court: 'It is not intended to prohibit the uniting in one bill of any number of provisions having one general object fairly indicated by its title. The

unity of the object must be sought in the end which the legislative Act proposes to accomplish. The degree of particularity which must be used in the title of an Act rests in legislative discretion, and is not defined by the Constitution. There are many cases where the object might with great propriety be more specifically stated, yet the generality of the title will not be fatal to the Act, if by fair intendment it can be · connected with it.'

"What was said in 23 N. J. Eq. is clearly in line with other cases. And the doctrines of the New Jersey court are in harmony with decisions of the highest courts of other States when construing similar provisions of the Constitution of their respective States. See authorities cited in Cooley, Const. Lim., 146, n. 1.

"Upon the authority of these decisions and upon the soundest principles of constitutional construction, we are of opinion that the objection taken to the Act of April 15, 1868, as being (when construed as we have indicated) in conflict with the Constitution of New Jersey, can not be sustained. The powers which the township of Montclair is authorized to exert, however varied or extended, constitute, within the meaning of the Constitution, one object, which is fairly expressed in a title showing the legislative purpose to establish a new or independent township. It is not intended by the Constitution of New Jersey that the title to an Act should embody a detailed statement, nor be an index or abstract, of its contents. The one general object, the creation of an independent municipality, being expressed in the title, the Act in question properly embraced all the means or instrumentalities to be employed in accomplishing that object. As the State Constitution has not indicated the degree of particularity necessary to express in its title the one object of an Act, the courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment, upon the sole ground that it embraced more than one object, or if but one object, that it was not sufficiently expressed by the title."

And in Woodson v. Murdock, 22 Wall., 351, it is said that "Where a State Constitution ordains 'that no law shall relate to more than one subject, and that shall be expressed in the title,' it can not be justly said that an Act violates that provision, which has many details, but they all relate to one general subject."

In Peavy v. Goss, 90 Texas, 89, in passing on the title of "An Act to regulate the sale of spirituous, vinous and malt liquors, or medicated bitters," the Supreme Court says: "The subject matter of the Act is the regulation of the sale of intoxicating liquors. The bond that is required to be given and the remedies upon it which are provided for are matters regulating the traffic, are germane to the subject of the Act and come strictly within the purview of the title.

The statute has but one object, that of the regulation of the sale of liquors which produce intoxication."

The statute under consideration has but one subject, to regulate elections, and every clause in it relates in some manner to the mode and method of finally securing a fair and impartial election of our officers, and the adoption or rejection of a proposition submitted to the voters.

The next contention of appellant is that section 170 of said Act is constitutional; that it is an unreasonable abridgement of the liberty of the citizen to contract, and an abridgement of the privileges and immunities of citizens of the United States, and contravenes section 1 of article 14 of the Constitution of the United States; that it is an infringement upon the right of the citizen as to the free disposition of his property. That said section is unreasonable, arbitrary and in contravention of section 19 of the Bill of Rights of the Constitution of Texas, in that same disfranchises the citizen without due process of law; because the same contravenes section 3 of the Bill of Rights of the Constitution of Texas, in that same denies to persons of a class, public privileges, which it confers upon other citizens of the State, and that it deprives such persons of the equal protection of the law, and abridges and restricts the qualifications of voters under the Constitution of this State, and places a burden in addition to and not authorized by the Constitution of Texas."

These are the grounds relied on by appellant in contending that said section is invalid, it being the section under which appellant was convicted. Said section reads:

"Sec. 170. Any person who loans or advances money to another knowingly to be used for paying the poll tax of such person, is guilty of a misdemeanor."

Our Constitution requires and commands the Legislature to enact laws to regulate elections in this State.

Section 2 of article 16 provides: "Laws shall be made to exclude from office, serving on juries, and from the right of suffrage those who may have been or shall hereafter be convicted of bribery, perjury or other high crimes. The privilege of free suffrage shall be protected by laws regulating elections, and prohibiting under adequate penalties all undue influence therein from power, bribery, tumult, or other improper practice."

In section 4 of article 6 it is also provided: "In all elections by the people the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot box."

It will thus be seen that the Constitution of this State not only authorizes but commands the Legislature to pass laws to prevent undue influence by improper practices, and to provide for the numbering of

tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box.

Our Constitution has been amended since the above recited articles were adopted, and section 2 of article 6 was amended by the addition of the following words: "provided further, that any voter, who is subject to pay a poll tax under the laws of the State of Texas shall have paid said tax before he offers to vote at any election in this State, and hold a receipt showing his poll tax paid before the first day of February next preceding such election. Or if the voter shall have lost or misplaced said tax receipt, he shall be entitled to vote upon making affidavit before any officer authorized to administer oaths that such tax receipt has been lost. Such affidavit shall be made in writing and left with the judge of the election, and this provision shall be self-enacting without the necessity of further legislation."

Our Legislature has levied an annual poll tax upon all male persons between the ages of twenty-one and sixty years of age, except Indians, insane persons, blind or deaf and dumb persons, or persons who have lost one hand or foot.

If the citizenship of Texas believed that individuals who did not take enough interest in the welfare of their State to pay the small amount levied as a poll tax should be debarred from voting, and in their organic law so provide, is it not the duty of the Legislature to see that that provision is respected, and not sit idly by and see it defeated by subterfuges and evasions? They were entrusted with the authority to regulate elections and preserve the purity of the ballot box; to protect the privileges of free suffrage, and prohibit undue influence by improper practices. If one is not entitled to vote who does not pay the poll tax levied, and our people deemed it to their best interest not to permit them to do so, we hold that it is not only within their power, but it is the bounden duty of the Legislature to enact laws to enforce this provision of the Constitution. If such a class of citizenship had become a menace to the welfare of our State, and our people evidently thought so, or they would not have adopted that provision of the Constitution in 1902, can it be said that men will be permitted to enfranchise that class of voters by knowingly advancing or loaning money to them for the purpose of paying the poll tax levied? There was a reason for adopting this provision of the Constitution, and designing men must not be permitted to evade its provisions to accomplish some unhallowed purpose. It is true that some men might advance or loan money for this purpose, with no purpose in view to improperly influence the person thus sought to be enfranchised, but if this matter had grown to be an evil in this State, and by such improper practices it was sought at times to control our elections, the law ought to have been enacted, and the wisdom of adopting such regulations has been entrusted to the Legislature

and not to the courts. Each of us must surrender some of our rights and privileges for the good of society and the best interest of our State, and we have no right to so use our means or so conduct ourselves as to work mischief to or do injury to our fellowman or our government.

For further discussion of this question we refer to the able opinions written in the Solon case, reported in 54 Texas Crim. Rep., pp. 261 to 298 inclusive. This question has been pending before this court for some time, and we have given it much thought and study. We have a very high opinion of the ability and learning of our presiding judge, and it is always with a great deal of reluctance that we reach a conclusion contrary to the views held by him, but having come to the conclusion that the opinion of the majority of the court in the Solon case is the law under the provisions of the Constitution of this State, the judgment of the trial court is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—I respectfully enter my dissent and refer to the dissenting opinion in Solon v. State, 54 Texas Crim. Rep., 261, at page 288, for some of the reasons.

[Rehearing denied March 29, 1911.—Reporter.]