HENRY PISTOLE v. THE STATE.

No. 1669. Decided June 19, 1912.

Rehearing denied November 6, 1912.

**1.—Practicing Veterinary Medicine—Statutes Construed—Police Power.**

Although the Act of the Thirty-Second Legislature, page 132, may be crude in some of its provisions, it is nevertheless, valid, and a conviction for unlawfully practicing and attempting to practice veterinary medicine, surgery, and dentistry can be sustained thereunder; such legislation is within the police power of the State, and is reasonable in its provisions.

**2.—Same—Title—Subject Matter.**

The title of the Act to regulate the practice of veterinary medicine, surgery and dentistry, etc., is in every way sufficient to embrace and authorize the various provisions thereof, under the Constitution of Texas and the decisions of the court thereunder. Following Watts v. State, 61 Texas Crim. Rep., 364, and other cases.

**3.—Same—Constitutional Law—Equal and Uniform Taxation.**

Sections 1 and 2, article 8, Constitution of Texas, which require that taxation shall be equal and uniform, etc., have no application to the Act of the Thirty-Second Legislature regulating the practice of veterinary medicine, etc., as the same is a police, and not a tax measure. Following Ex parte Cramer, 62 Texas Crim. Rep., 11.

**4.—Same—Constitutional Law—Police Power.**

The Act of the Thirty-Second Legislature, page 132, does not violate sections 17 and 19, article 1, Constitution of Texas and is merely a reasonable regulation to regulate the practice of veterinary medicine, etc.

**5.—Same—Fourteenth Amendment—Due Process of Law.**

The Act of the Thirty-Second Legislature, page 132, regulating the practice of veterinary medicine, etc., does not violate section 2 of article 4, of the Fourteenth Amendment of the Constitution of the United States, and is due process of law.

**6.—Same—Police Power—Residence of State—Officers of the United States.**

Section 7 of the Act of the Thirty-Second Legislature, page 132, which exempts certain residents of the State from the payment of the fee or license does not contravene the Constitution of the State or of the United States, and the clause exempting officers of the United States from its provisions is a valid and reasonable regulation.

**7.—Same—Board of Examiners—Revoking License—Fraud.**

Section 11 of the Act of the Thirty-Second Legislature, page 132, regulating the practice of veterinary medicine, etc., which authorizes the board of examiners to revoke any license it has issued, upon evidence that it was

secured by fraud, etc., is a reasonable and proper regulation; besides, even if such section was invalid, it would not affect the other provisions of the Act.

**8.—Same—Board of Examiners—School of Medicine.**

The contention that the board of examiners under the Act of the Thirty-Second Legislature, regulating the practice of veterinary medicine, etc., consisted of only five members, and that three of them were graduates of the same school is untenable, and can neither affect the validity of the Act nor justify defendant in the violation thereof.

**9.—Same—Presumption—Executive Branch of Government.**

This court must presume that the Governor, who represents a co-ordinate branch of the Government, has acted in compliance with the law in the appointment of members of the board of examiners as provided under the Act of the Thirty-Second Legislature, page 132, regulating the practice of veterinary medicine, etc., it being shown by the record that said board existed legally under said Act.

Appeal from the County Court of Dallas County at Law.   Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of unlawfully practicing veterinary medicine, etc.; penalty, a fine of $25.

The opinion states the case.

*Walker & Williams* and *H. C. Jerrell* and *C. F. Greenwood,* for appellant.—On question of discrimination: Ex parte Jones, 38 Texas Crim. Rep., 482; Pullman Palace Car Co. v. State, 64 Texas, 274; Boyd v. U. S., 116 U. S., 616; State v. Biggs, 64 L. R. A., 139; Ohio v. Gravett, 55 L. R. A., 791; New Hampshire v. Pennoyer, 5 L. R. A., 709.

On question of class legislation: Conolly v. Union Sewer Pipe Co., 184 U. S., 540; Van Harlington v. Doyle, 134 Cal., 53; Garrabad v. Dering, 84 Wis., 585; Simrall v. City of Covington, 14 S. W. Rep., 369; Noel v. People, 52 L. R. A., 287; Gustafson v. State, 40 Texas Crim. Rep., 67; State v. Higgins, 38 L. R. A., 561; State v. Goodwill, 6 L. R. A., 621; State v. Bayer, 34 Utah, 257; In re Day, 181 Ill., 73; State ex rel. v. New Orleans, 36 Sou., 999.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On August 2, 1911, a complaint and information were filed against appellant charging that on August 1, 1911, in Dallas County, Texas, appellant, "who was then and there a resident of said county of Dallas and State of Texas, did then and there unlawfully practice and attempt to practice veterinary medicine, surgery and dentistry, by then and there treating, operating on and prescribing and attempting to treat, operate on and prescribe for a physical ailment and physical injury to and deformity of a domestic animal, to wit, a horse, for a money compensation, which he did then and there receive, and the said Henry Pistole did then and there profess publicly to be a veterinary surgeon and dentist within the afore-

said county of Dallas and State of Texas; without the said Henry Pistole first having registered in the district clerk's office of Dallas County, Texas, his authority and certificate of license from the State Board of Veterinary Medical Examiners of the State of Texas for so practicing and without the said Henry Pistole first having applied for and taken out a license from the aforesaid Board to practice veterinary surgery in said State and county and without the said Henry Pistole having first made an affidavit before the district clerk of Dallas County, that he had practiced veterinary surgery for five years before the date last above."

The appellant waived a jury and submitted the case to the court on an agreed statement of facts, which is as follows:

"That the defendant resides at Garland, in Dallas County, Texas, and has resided in Dallas County, Texas, for about twelve years and is forty years of age, and that he has been practicing veterinary medicine and veterinary surgery and veterinary dentistry for a part of twelve years in Dallas County, Texas, and for a number of years in Rockwall and Collin County, Texas, and that he charges fees and money for the services so rendered, and that he did perform the act alleged in the complaint and information in Dallas County, Texas, about the time, charged and collected a fee for the same.

"The defendant has for ten years been engaged in the active practice of veterinary medicine, surgery and dentistry as his sole calling, occupation and profession, and that his said practice has covered the counties mentioned above.

"That he is well versed and schooled in said profession of veterinary medicine, surgery, and dentistry, and has shown himself thoroughly qualified to practice said science in all its branches in a skillful and successful manner. That he could successfully pass an examination before the Board created for the examination of applicants to practice veterinary medicine, surgery and dentistry under the Act of the Thirty-Second Legislature, pages 132, 133, 134, 135, 136.

"That he has not submitted to an examination before the State Board of Veterinary Examiners under said law, nor under any section of said law, and that he has not passed any examination before said Board since the passage of said law, and that he had not done so at the time he performed the act alleged in the complaint and information, and has not done so since then, and has no certificate of license or license of any character from said Board.

"That the defendant herein did not prior to the day and date alleged in the affidavit and information in this cause make an affidavit before the district clerk of Dallas County, Texas, (county of his residence) that he had practiced veterinary surgery for a period of five (5) years.

"That the defendant herein has no diploma or certificate or license from any regularly organized and recognized veterinary college or school of any sort or kind anywhere.

"That the defendant has practiced his profession of veterinary medicine, surgery and dentistry in the counties of Rockwall and Collin in the State of Texas, both before and after the filing of the complaint and information in this cause, and that he has in each instance, when he has so practiced his profession in said counties, fixed and collected fees for his work.

'That the defendant has actively practiced his said profession in Dallas County for more than five years preceding the passage of said law.

"That the State Board of Veterinary Medical Examiners, as it now · (Nov. 20, 1911), stands under the Act of the Thirty-Second Legislature, is composed of five (5) members only, and that three of said five members on said Board are graduates from the same veterinary college, that is, from the Kansas City Veterinary College and institute.

"That the defendant in this case is a man of good moral character."

The court adjudged the appellant guilty and fixed his penalty at a fine of $25, the lowest under the law.

It was doubtless the intention of the parties to make this a test case for if the Act under which appellant was prosecuted and convicted is valid, the record shows he defied the law, and it is clear that it was his purpose to in no way comply with, or attempt to comply therewith. The Act under which this prosecution was had was enacted by the Thirty-Second Legislature in 1911, and approved on March 16, 1911, pages 132 to 136. The object and purpose of the Act is clearly manifest on its face wherein in section 17 it is said: "The fact that there is no law governing veterinaries within this State, and unskilled persons are engaged in that business to the injury and detriment of the interests and material welfare of the people, create an emergency and an imperative public necessity requiring that the constitutional rule requiring bills to be read on three several days be suspended, and the same is hereby suspended, and this Act shall take effect and be in · force from and after its passage; be it so enacted."

This Act, like many others, when the subject is first legislated upon, may be crude in some of its provisions. It is evident that in some sections of the Act some word or words are omitted, but if so, the Act is thereby in no way made invalid. In some instances, to take the whole context, such word or words are so apparent that they should be supplied. But whether this is done or not, as said above, such omissions in no way materially affects the validity of the Act.

It is perfectly manifest from the whole of the Act that the Legislature intended to regulate the practice of veterinary medicine, surgery and dentistry, which was clearly within the proper police powers of the State. It is so universally laid down by all text book writers and the opinions of the courts of the various States and the United States that such legislation is within the police power of the State, that it is unnecessary to cite any authority on this point.

The validity of the Act is attacked by appellant's able attorneys on

many grounds. It is so late in the term and other matters of importance are so pressing that we deem it unnecessary to cite the numerous authorities and argue the questions sustaining the validity of this Act. But after a careful study of the Act and the attacks thereon by appellant, we have reached the conclusion that the Act is a most reasonable and proper exercise of the police power of this State and that none of the contentions of appellant as to its invalidity are correct. It is our opinion that the Act is clearly constitutional.

We shall not undertake to take up in the order presented by appellant the points on which he contests the validity of the Act, but will call attention to the principal ones thereof and merely decide the point and perhaps cite some of the authorities on the question.

One contention by appellant is that the title to the Act is too general and does not embrace or authorize the various provisions thereof. The title is as follows: "An Act to regulate the practice of veterinary medicine, surgery and dentistry; creating a Board for the examination of applicants for the practice of veterinary medicine, surgery and dentistry; prescribing their powers, duties and qualifications; said Board to be known as the 'State Board of Veterinary Medical Examiners;' prescribing penalties for a violation of the provisions of this Act, and declaring an emergency." In our opinion the title is in every way sufficient under the Constitution and many decisions of this court. Watts v. State, 61 Texas Crim. Rep., 364, 135 S. W., 585, and authorities therein cited.

Another contention by appellant is that it violates sections 1 and 2, article 8 of our Constitution which require that taxation shall be equal and uniform and that all occupation taxes shall be equal and uniform, etc. These provisions of our Constitution are wholly inapplicable to this Act. This is not a tax measure but a police regulation requiring persons to procure a license before they are permitted to practice as veterinarians. Ex parte Cramer, 62 Texas Crim. Rep., 11, 136 S. W. Rep., 61, and cases therein cited.

Again, appellant contends that it violates these sections of our Constitution: Section 3, article 1, to the effect that all free men have equal rights and no man or set of men are entitled to exclusive, separate public emoluments or privileges, etc. And section 17, article 1, which provides that no person's property shall be taken, damaged, or destroyed, or applied to public use without adequate compensation being made. And section 19, article 1, which provides that no citizen of this State shall be deprived of property, privileges or immunities, etc., except by due course of the law of the land. In our opinion none of these provisions are violated by this Act and none of these provisions are applicable. The Act in our opinion is a most reasonable regulation in all of its provisions of the subject legislated upon and while it makes some classifications of those who have heretofore practiced, or who may hereafter, desire to practice, they are very reasonable, and unless they were in the Act a much more plausible claim

could be made that its provisions were unreasonable, than with the provisions as they exist in the Act. By every provision of it, where classes are made, it is necessary to do so, and each within that class have equal rights with the others, and no exclusive rights or privileges are improperly attempted to be given to one over another. No one's property thereby is taken, damaged or destroyed, but merely a reasonable and proper police regulation is made of the business legislated upon. Neither is any one thereby deprived of his life, liberty, property, privileges, or immunities, but the Act reasonably, and only reasonably, for the benefit of the whole people, undertakes and does properly regulate the license and practice of a veterinarian.

We will state briefly, the substance only of the Act as we deem that amply sufficient. The first section prohibits any person from practicing veterinary surgery, unless and until such person complies with the Act. Section 2 provides for the appointment by the Governor of a Board of seven medical examiners and prescribes whom the Governor may appoint and whom he shall not appoint. Section 3 provides for the meeting of this Board and the organization thereof and the election of the several officers and that four members shall constitute a quorum. Section 4 prescribes when they shall meet and that notice shall be given of such meeting and what examinations are authorized and some of the qualifications of the applicants.

Section 5 prescribes the various subjects upon which applicants shall be examined. This section has a most reasonable provision to the effect that anyone who has been practicing as a veterinarian in Texas as his principal occupation, for at least one year prior to the time the Act goes into effect, shall be entitled to a temporary certificate or license which shall be good for one year authorizing him to practice and without at that time undergoing an examination by the Board. It also provides that where any person who has practiced for five years prior to the enactment, may practice in their county or residence only without license by making an affidavit before the district clerk of his county that he has so practiced for five years, but if such person shall remove from the county of his residence he shall comply with all the requirements of said Act before he shall be allowed to practice in the county to which he removes. This is a general provision applicable alike to all under the same conditions, is not an arbitrary discrimination permitting some and forbidding others to carry on their business or profession, but as stated, is general and applicable to all alike under the same circumstances. In our opinion it does show such material difference in the situation of the parties as would not only authorize but would require such difference to be made. In fact, it occurs to us that if such distinction were not made as to the classes of persons under the different situations that the provisions of the Act would then be unequal and perhaps raise some question of its validity. This court can not pass upon a question of policy by the Legislature. In some instances this court might materially differ with the Legis-

lature about the policy of certain legislation, but whenever the Legislature has the right itself to pass upon the question of policy, this court can not substitute its judgment for that of the Legislature. The Legislature and not this court knows, or is, so far as this court is concerned, conclusively presumed to know the differences, if any, of the various persons who have heretofore practiced or who may hereafter seek to practice, veterinary medicine or surgery, and would better know than this court the situation of such persons so as to make the proper distinction between them as classes—not as individuals—in authorizing or prohibiting them from practicing such profession.

Again, appellant contends that said Act violates section 2 of article 4 of the United States Constitution wherein it is provided that citizens of each State shall be entitled to all the priviliges and immunities of citizens of the several States. And of the 14th amendment to the Constitution of the United States wherein it requires that no State shall make or enforce any law which may abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, or deny to any person within its jurisdiction the equal protection of the law. In our opinion neither of these constitutional provisions are in any way violated by this Act.

In this connection we state further of the specific enactments of this law. Section 6 provides that the Board shall keep books, and what they shall show and that they shall be open to inspection. Section 7, in effect, requires that all persons who make an original application and who must stand an examination by the Board on the various subjects prescribed by section 5 of the Act, shall pay a fee of $5 which is intended as some compensation to the Board for its work in making this examination, but it expressly provides that the payment of such fee shall not be required of those who have practiced *in Texas* for as much as one year before the Act became operative.

Section 8 requires every one when he gets license to record the same in the office of the district clerk of the county in which he makes his residence and shall display it in his regular place of business and prohibits any one from practicing until he records his license, and if he does not record it within three months, it shall no longer be valid. It further requires that when one removes his residence from one county to another to likewise record his license in the county into which he removes; but authorizes those who have so registered their license in the county of their residence to go from one county to another on professional business without being required to register in such county where he temporarily goes.

It is unnecessary to state the provisions of sections 9 and 10, because they are as to the details of the clerk and officers of the Board, etc. Section 12 makes it an offense for anyone who practices or attempts to practice veterinary medicine, surgery and dentistry without first having complied with the provisions of this Act and that each day shall be a

separate offense, and upon conviction the penalty fixed at a fine not less than $25 nor more than $200.

Section 13 prescribes who shall be regarded as practicing such professions, unnecessary to state. Then specifically states that the Act shall not be construed to interfere with or punish veterinarians in the United States army or in the United States Bureau of Animal Industry while so commissioned, nor to any lawfully qualified veterinarians residing in other States or countries from meeting veterinarians of this State in consultation, nor to any veterinarian residing on the border of a neighboring State and duly authorized under the laws thereof to practice, extending into the limits of this State; provided such practitioner shall not open any office or appoint a place to meet patients within this State.

Stress is laid by appellant on that part of section 7 of the Act which exempts persons from the payment of the $5 fee for a license, who have practiced veterinary surgery in Texas for one or more years before the Act became operative, claiming especially that this is violative of the two provisions of the United States Constitution mentioned above.

Many of the States in the passage of Acts within the police power of the State, regulating the sale of intoxicating liquors have actually prohibited, as our law does, a license to be issued and a person to engage in the sale of intoxicating liquors, unless they are residents of the State. In other words, in the proper exercise of the police power, where deemed necessary by the Legislature, that to require a person to be a resident of this State for a given length of time before license can be issued to such person, is not prohibited by the Constitution of the United States. Mette v. McGuckin, 37 L. C. P. Co., 934 (not officially reported in the U. S. Sup. Ct. Rep.). In this case the Supreme Court of the United States sustained the validity of an Act of the Nebraska Legislature and of the decision of the Supreme Court of the State of Nebraska on this point. See also Freund Police Power, secs. 710 and 711. Also the cases cited in the notes under said two sections. Also first Tiedeman on State and Federal Control of Persons and Property, p. 246, note 1.

The veterinarians in the United States army are officers thereof and their duties as such are prescribed by the Acts of Congress. So are those in the Bureau of Animal Industry of the United States. Such officers and their duties are prescribed under the Act of Congress. It was entirely proper, therefore, that this Act should expressly exempt, such officers of the United States from its provisions while, as expressed in the Act, they are so commissioned. This State could not require such officers to take out license and stand an examination under our law for they are not practicing such as is attempted to be regulated under the provisions of this Act, but they would be in the discharge of their official duties as officers of the United States army and of the United States. Even if such exemption had not been made

in this Act this court would necessarily construe it as not applicable to such United States officers. And the exemptions of veterinarians, such as are made by section 13 of the Act, applicable to all under the same circumstances, are in no way violative of our Constitution, or the Constitution of the United States.

It occurs to us that section 11 of the Act which authorizes the Board of Examiners to revoke any license it has issued, upon evidence that it was secured by fraud, or the holder had been guilty of unprofessional or dishonorable conduct is a reasonable and proper provision; but even if that section of the Act should for any reason be held unconstitutional, it could not and would not affect the other provisions of the Act which appellant has violated.

The only other question necessary to be noticed is appellant's contention that the Board of Examiners at the time the agreed statement of facts was filed in this case, November 20, 1911, consisted of only five members and that three of them were graduates of the same school, can neither affect the validity of the Act, nor justify appellant in the violation thereof. This court can not assume and will not presume that the Governor, a coordinate branch of the government, has violated his sworn duty. We do not understand that that section of the Act which requires that no two members of the Board shall be graduates of the same college means, or should be construed to mean, that while they might be graduates of the same school that they might not be graduates of some other school in addition as well. The object of this provision, as we take it, was not to prevent the Governor from appointing persons who are graduates of the same school if as a matter of fact they were not only graduates of that school but graduates of some other school too. The statement of facts does not disclose whether or not the other two members of the board had ever been appointed or had died, removed, or otherwise vacated their office, nor in any other way show that the Governor had violated his official duty. So far as the record discloses it may be that the other two members of the Board at that particular time had vacated their offices, but that does not show that the Board up to that time had not been legally constituted and all of them appointed, nor that sufficient time had elapsed in case of such vacated office for the Governor to appoint their successor so as to complete and constitute a full Board of seven members. And besides this, so far as the record shows, the five members who were then on the board was without question a de facto Board if not a de jure Board. It may be that if appellant had shown that there was no legal Board in existence and that although he was ready and willing to go before one when constituted, and secure his license under the terms of the Act, he could not do so because no legal Board existed to authorize it, that he should not have been convicted. The statement of facts shows the reverse of this condition; that he in no way attempted to secure license and did not intend to

do so and that he not only defied the law, but has persistently, wilfully and intentionally violated it.

The judgment will be affirmed.

*Affirmed.*

Davidson, Presiding Judge, not sitting.

[Rehearing denied November 6, 1912.—Reporter.]