**Reversed and Remanded and Opinion filed May 22, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00884-CR

**ROBERT RANDALL KRAUSE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 1734286**

## O P I N I O N

Appellant Robert Randall Krause pleaded guilty to driving while intoxicated after the trial court denied his motion to suppress blood test results. Appellant argues that the trial court erred by denying his motion to suppress because the person who obtained his blood specimen was licensed as an "emergency medical technician-intermediate" and, therefore, was not a "qualified technician" pursuant to Chapter 724 of the Texas Transportation Code.

Under Chapter 724, "emergency medical services personnel" are expressly excluded from being "qualified technician[s]" who can take a blood specimen without a

warrant at the request or order of a peace officer. *See* Tex. Transp. Code Ann. § 724.017(a), (c) (Vernon 2011). It is undisputed that the person who took appellant's blood was a licensed "emergency medical technician-intermediate" and worked in the emergency room of a hospital.

We agree with appellant that the trial court erred by denying the motion to suppress in light of Section 724.017(c)'s unambiguous terms. We reverse and remand for a new trial.

## BACKGROUND

The relevant facts are undisputed. Appellant was arrested for driving while intoxicated. Without obtaining a warrant, the arresting officer sought a mandatory, involuntary blood draw. *See* Tex. Transp. Code Ann. § 724.012(b) (Vernon 2011). Appellant's blood was taken by Rachel Lopez at the LBJ Hospital in Harris County, Texas.

Appellant moved to suppress the results of the blood testing, arguing that Lopez was not a "qualified technician" authorized to take his blood. *See* Tex. Transp. Code Ann. § 724.017(a), (c). The trial court held a hearing, and Lopez was the only testifying witness. The court issued findings of fact and conclusions of law, finding in part as follows:

- "The Court accepts [Lopez's] testimony as being truthful;"
- Lopez held a license as an EMT-I;[1]
- Lopez was employed at the LBJ Hospital for six years;
- "As an EMT-I, she is trained to draw blood, to start IV's, to do tracheotomies, and to start intubation;"
- "Her duties in the LBJ Hospital emergency room are limited to drawing blood, but on occasion she is called to other parts of the hospital to start IV's;"
- "She also completed training as an EMT-[Basic], which is a lower

[1] "EMT-I" means "emergency medical technician-intermediate."

2

paraprofessional license that requires knowledge of CPR, 'anything basically [in] the field,' and ambulance driving;"

- The State proved by a preponderance of the evidence that the blood specimen was taken in a sanitary place by someone trained to do so and in a reasonable manner.

Lopez testified that she works in the hospital's emergency room and performs 50 to 100 blood draws per day. At the time she took appellant's blood, the hospital classified her as an EMT-I. The trial court did not explicitly conclude that Lopez was a "qualified technician" for purposes of Section 724.017(a), but the court nonetheless denied the motion to suppress.

### ANALYSIS

Chapter 724 of the Transportation Code governs the taking of a blood specimen without a warrant under certain circumstances. Section 724.017(a) states, "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter." Tex. Transp. Code Ann. § 724.017(a). Subsection (c) states, "In this section, 'qualified technician' does not include emergency medical services personnel." *Id.* § 724.017(c).

Appellant argues that Lopez was not a "qualified technician" authorized to draw his blood because (1) Section 724.017(c) expressly and unambiguously excludes "emergency medical services personnel" from being a "qualified technician" under Section 724.017(a); and (2) Lopez falls within the scope of "emergency medical services personnel" as a licensed "emergency medical technician-intermediate."

## I.      Standard of Review and Principles of Statutory Construction

When, as here, the historical facts are undisputed and the issue is one of statutory construction, we review *de novo* the trial court's ruling on a motion to suppress. *Mahaffey v. State*, No. PD-0795-11, __S.W.3d __, 2012 WL 1414108, at *3 (Tex. Crim. App. Apr. 25, 2012).

"When interpreting statutes, courts must seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Id.* (quotation omitted). We first look to the literal text for meaning, *id.*, and we should construe words in accordance with their common usage unless a word has acquired a technical or particular meaning. *See* Tex. Gov't Code Ann. § 311.011 (Vernon 2005); *State v. Rhine*, 297 S.W.3d 301, 312 (Tex. Crim. App. 2009); *see also* Tex. Penal Code Ann. § 1.05(b) (Vernon 2011) (Section 311.011 of the Code Construction Act applies to the Penal Code). If the plain language is ambiguous or would lead to absurd consequences, we may consider extra-textual sources such as legislative history. *Mahaffey*, 2012 WL 1414108, at *3. A statute is ambiguous when it "may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous where it reasonably permits no more than one understanding." *Id.* A statute leads to an absurd consequence when the Legislature could not have possibly intended the result. *See id.* at *4.

## II. Lopez Was Not a "Qualified Technician" Under Chapter 724

The State does not argue that the statutory phrase "emergency medical services personnel" cannot encompass a licensed "emergency medical technician-intermediate" such as Lopez. Rather, the State contends that an emergency medical technician who works in a hospital and regularly performs blood draws should not be classified as "emergency medical services personnel" for purposes of this statute. The dispute on appeal therefore focuses on the interpretation and application of Section 724.017(c).

At the conclusion of the suppression hearing, the trial court stated, "Well, it's my opinion that it does sort of fall under *Texas versus Johnston* and that it's going to be based on her qualifications; and listening to her testimony, I do believe she was qualified and more than qualified to be able to take a blood sample . . . ." This was a reference to *State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011), which held that a blood draw by a police officer was reasonable under the Fourth Amendment in part because the officer's training and experience as an emergency medical technician made him "qualified" to draw blood. *See id.* at 662, 664.

4

Reliance on *Johnston* is misplaced because that case applied a Fourth Amendment reasonableness standard to circumstances in which police took a blood specimen after securing a warrant. *See id.* at 661. *Johnston* did not address whether an emergency medical technician is a "qualified technician" in connection with a warrantless blood draw under Section 724.017 of the Transportation Code. *See id.*

The parties have cited, and research has revealed, only one case addressing this issue under Section 724.017. *See State v. Laird*, 38 S.W.3d 707 (Tex. App.—Austin 2000, pet. ref'd).

In *Laird*, an emergency medical technician took a blood specimen from the defendant at a fire station. *Id.* at 710. The trial court suppressed evidence of the blood test because the emergency medical technician was not authorized to take a blood specimen under Section 724.017. *Id.* at 711. The court of appeals affirmed, holding that the emergency medical technician was not authorized to take the defendant's blood under Section 724.017. *Id.* at 712.

Noting that Chapter 724 does not define "emergency medical services personnel," *Laird* reasoned that the emergency medical technician was not a "qualified technician" under Section 724.017(a) because (1) Section 724.017(c) states that "'qualified technician' does not include emergency medical services personnel;" and (2) the witness who took the blood specimen testified that he was "a high-level emergency medical technician." *Id.*

*Laird* rejected the State's arguments that "a paramedic employed by a hospital in the task of drawing blood at the hospital in the course of everyday treatment of patients . . . is a 'qualified technician' and not excluded from the class of persons authorized to draw blood simply because he also happens to be a paramedic." *Id.* (omission in original). Similarly, *Laird* rejected the State's argument that an emergency medical technician could be a qualified technician in the absence of an emergency situation: "Nothing in the statute itself suggests that the existence of an emergency is what disqualifies emergency medical services personnel from taking blood specimens." *Id.* The court held that

5

Section 724.017(c) is not absurd because it affords peace officers with a bright line rule that is easy to follow: "[T]hey may request that blood specimens be taken by any qualified person other than emergency medical services personnel." *Id.* at 712–13. We agree with *Laird*'s analysis.

Like the Austin Court of Appeals, we too observe that Section 724.017(c)'s unambiguous terms lead to "some unexpected outcomes in certain cases such as this one." *Id.* at 712. It is particularly troubling to this court that the emergency medical technician in *Laird*, and Lopez here, arguably were more qualified to take a blood specimen than some other non-emergency medical services personnel who have been deemed to be "qualified technicians" under Section 724.017(a). *See State v. Bingham*, 921 S.W.2d 494, 495–96 (Tex. App.—Waco 1996, pet. ref'd) (unlicensed phlebotomist with four months of specialized education and at least one year of work experience); *Finley v. State*, No. 06-10-00218-CR, 2011 WL 6395158, at *6 (Tex. App.—Texarkana Dec. 20, 2011, pet. filed) (mem. op., not designated for publication) (uncertified phlebotomist who was trained by the hospital and supervised by a certified phlebotomist); *Meier v. State*, No. 05-08-00486-CR, 2009 WL 765490, at *1–2 (Tex. App.—Dallas Mar. 25, 2009, no pet.) (not designated for publication) (uncertified phlebotomist with 200 hours of clinical training and two-and-a-half years of experience); *Jessup v. State*, No. 13-02-00024-CR, 2004 WL 2612958, at *2 (Tex. App.—Corpus Christi Nov. 10, 2004, no pet.) (mem. op., not designated for publication) (phlebotomist who completed a course about drawing blood and successfully took the hospital's checklist test about drawing blood).

We nonetheless agree with *Laird*'s conclusion that the result in this case is not absurd; categorically excluding all "emergency medical services personnel" from drawing blood under Chapter 724 creates a bright line rule that is easy for peace officers to follow. *See* 28 S.W.3d at 712–13. Invalidating warrantless blood draws performed by skilled and experienced "emergency medical services personnel" may or may not be undesirable in particular cases; but such a result is not one that the Legislature could not

possibly have intended.

The State contends that *Laird* is distinguishable on its facts because the blood specimen at issue in that case was taken at a fire station, but appellant's blood was taken at a hospital. Nothing in *Laird* indicates that the location of the blood draw affected the meaning of "emergency medical services personnel." To the contrary, *Laird* specifically rejected the State's argument that "a paramedic employed by a hospital in the task of drawing blood at the hospital in the course of everyday treatment of patients" could be a qualified technician under the statute. 38 S.W.3d at 712. *Laird* focused instead on the fact that the paramedic was an "emergency medical technician." *See id.* We agree that "emergency medical services personnel" includes an "emergency medical technician" working in the hospital emergency room.[2]

Notwithstanding Section 724.017(c), the State invites us to adopt a "common sense interpretation of the term qualified technician" that encompasses Lopez. We decline this invitation to rewrite Section 724.017(c) because "the commitment to the separation of powers is too fundamental for us to pre-empt [legislative] action by judicially decreeing what accords with 'common sense.'" *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 195 (1978); *see also Seals v. State*, 187 S.W.3d 417, 422 (Tex. Crim. App. 2005) ("We appreciate the need and the concern for rational public policy. It is not our place within the judiciary, however, to construe a statute based on our notions of what is rational or what makes good common sense.").

Similarly, the State argues that applying Section 724.017(c) as written "would cause less efficient operation of hospital personnel because doctors and nurses would be taken away from patients with very serious needs." Policy considerations such as these are more properly directed to the Legislature. *See, e.g.*, *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52 (2008) ("[I]t is not for us to substitute our view of . . . policy for the legislation which has been passed by [the Legislature]. That

---

[2] The location of the blood draw already is addressed by the requirement that the blood specimen be taken in a sanitary place. *See* Tex. Transp. Code Ann. § 724.017(a).

7

said, we see no absurdity in reading [the statute] as setting forth a simple, bright-line rule instead of [a] complex, after-the-fact inquiry . . . ." (first omission in original) (quotations omitted)); *Montgomery v. State*, 145 Tex. Crim. 606, 170 S.W.2d 750, 753 (1943) ("The courts are not concerned with the wisdom of legislation, this being a matter resting exclusively with the legislature."); *Pistole v. State*, 68 Tex. Crim. 127, 150 S.W. 618, 621 (1912) ("This court cannot pass upon a question of policy by the Legislature. . . . [W]henever the Legislature has the right itself to pass upon the question of policy, this court cannot substitute its judgment for that of the Legislature."); *cf. State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 918 & n.64 (Tex. Crim. App. 2011) ("[I]mportant moral and public policy questions [are] suitable for intense and open debate by legislative policy makers, not by courts . . . . [J]udges are not free to impose their personal policy views or morality in lieu of the policy choices and decisions of the democratically elected legislatures . . . .").

The State also argues that Section 724.017(c)'s phrase "does not include" is ambiguous, or means "does not automatically include." We fail to see how "does not include" means anything other than "excludes" in this context. Accordingly, we reject the State's ambiguity argument. *See, e.g.*, *United States v. Temple*, 105 U.S. 97, 99 (1881) ("When the language is plain, we have no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision."). Section 724.017(c) states that "'qualified technician' does not include emergency medical services personnel." Tex. Transp. Code Ann. § 724.017(c). This provision is unambiguous because it is susceptible to only one reasonable interpretation in this case. The phrase "emergency medical services personnel," under its common or technical understanding, necessarily includes a person such as Lopez who was licensed as an "emergency medical technician-intermediate;" held the job title of "emergency medical technician-intermediate;" worked in the emergency room of a hospital; and was trained to draw blood, do tracheotomies, start intubations, perform CPR, do "anything basically [in] the field," and drive an ambulance. *See Laird*, 28 S.W.3d at 712 (emergency medical technician employed by a

8

hospital would be "emergency medical services personnel"); *cf.* Tex. Health & Safety Code Ann. § 773.003 (Vernon 2010) ("In this chapter . . . 'Emergency medical services personnel' means (A) emergency care attendant; (B) emergency medical technicians; (C) emergency medical technicians-intermediate; (D) emergency medical technicians-paramedic; or (E) licensed paramedic.").

Because Section 724.017(c) is not ambiguous and does not lead to absurd results, resort to legislative history is not warranted. *See Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991). Resort to legislative history does not help the State in any event. We have reviewed the bill analysis for S.B. 420, which added the provision excluding emergency medical services personnel. *See* Act of May 10, 1991, 72d Leg., R.S., ch. 148, 1991 Tex. Gen. Laws 737, 737. The bill analysis states, "If emergency medical services personnel (EMS) are included as qualified technicians, then it could mean that they can perform these tests in an ambulance, as it could be argued that an ambulance is a 'sanitary place.'" House Comm. on Public Safety, Bill Analysis, Tex. S.B. 420, 72d Leg., R.S. (1991).

The State relies on this excerpt to argue that the Legislature wanted to prevent blood specimens from being taken in an ambulance or on the side of the road. However, if the Legislature wanted to prevent blood draws from being conducted in certain locations, it could have expressed that intent clearly in the statute without categorically excluding an entire class of medical services personnel. *See United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952) ("It is our judicial function to apply statutes on the basis of what [the Legislature] has written, not what [the Legislature] might have written."); *cf. Laird*, 38 S.W.3d at 712 ("If the legislature was concerned about emergency situations, it could easily have disqualified blood samples taken . . . during an emergency."). We follow the language in the statute rather than an isolated remark in the legislative history. *See Pa. R.R. v. Int'l Coal Mining Co.*, 230 U.S. 184, 199 (1913) ("[N]ot even formal reports — much less the language of a member of a committee — can be resorted to for the purpose of construing a statute contrary to its plain terms, or to make identical that

which is radically different."); *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) ("Statements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute."); *see also Boykin*, 818 S.W.2d at 785 ("[T]he Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." (quotations omitted)).

Our holding is buttressed by the Legislature's conduct after *Laird* was decided. The Legislature met several times after *Laird* and amended Section 724.017, but the Legislature left subsection (c) untouched. *See* Act of May 31, 2009, 81st Leg., R.S., ch. 1348, § 19, 2009 Tex. Gen. Laws 4262, 4268. Although "legislative inaction does not necessarily equate to legislative approval," *see State v. Medrano*, 67 S.W.3d 892, 903 (Tex. Crim. App. 2002), "[w]hen the Legislature amends a statute in ways that do not affect the interpretation of that statute previously given by courts, we presume that the Legislature has consented to the courts' statutory interpretation." *Harris Cnty. Appraisal Dist. v. Tex. Gas Transmission Corp.*, 105 S.W.3d 88, 97 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see also Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) ("The Legislature has amended the statute since its enactment in 1973, but it has never overruled our [interpretation]. In the absence of any contrary legislative command, we will presume that the Legislature has approved of our [interpretation]."). Here, the Legislature's 2009 amendment did not alter *Laird*'s interpretation of subsection (c). Accordingly, we may presume the Legislature has consented to *Laird*'s interpretation.[3]

---

[3] We note that the Legislature did not amend subsection (c) even though it had the opportunity to do so. Rather than concur with a House amendment that would have deleted subsection (c) and specifically allowed a blood specimen to be taken by "a licensed or certified emergency medical technician-intermediate or emergency medical technician-paramedic," the Senate referred the House amendment to the conference committee. *See* S.J. of Tex., 81st Leg., R.S. 4118–20 (2009). The committee did not include the amendment in the final version of the bill. *See* 2009 Tex. Gen. Laws 4268.

Given that the Legislature amended the statute in question without modifying *Laird*'s interpretation, we need not ascribe much weight, if any, to the Legislature's failure to pass this particular floor amendment or four other bills, *see* Tex. H.B. 1406, 82d Leg., R.S. (2011); Tex. H.B. 259, 80th Leg., R.S. (2007); Tex. H.B. 14, 79th Leg., R.S. (2005); Tex. H.B. 1141, 78th Leg., R.S. (2003), that would have deleted current subsection (c) and allowed certain emergency medical technicians to take blood

Appellant's sole issue is sustained.

## CONCLUSION

We conclude that the trial court erred by denying appellant's motion to suppress. We therefore reverse the trial court's judgment and remand for a new trial.


/s/    William J. Boyce
Justice


Panel consists of Justices Boyce, Christopher, and Jamison.

Publish — Tex. R. App. P. 47.2(b).

---

specimens. *Compare Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 442–43 (Tex. 2009) (disapproving of discerning legislative intent from failed bills), *with Ojo v. Farmers Group Inc.*, 356 S.W.3d 421, 433 (Tex. 2011) (considering fact that two subsequent bills "died in committee" that would have outlawed credit scoring, a practice causing disparate impact; holding that disparate impact claim based on credit scoring was not cognizable under the Insurance Code), *and Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993) (finding it "significant" that the conference committee did not include a social host liability provision in the final dram shop statute when the Senate version had included the provision; declining to recognize common law social host liability).