

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0819-12

**ROBERT RANDALL KRAUSE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

KELLER, P.J., delivered the opinion of the Court in which JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. JOHNSON, J., filed a concurring opinion. ALCALA, J., filed a concurring opinion. PRICE, J., filed a dissenting opinion in which WOMACK, J., joined. MEYERS, J., did not participate.

After appellant was arrested for driving while intoxicated, his blood was drawn at a hospital by Rachel Lopez. Although Lopez's job title was "emergency medical technician" and she was licensed as an EMT-I, her primary duty at the hospital was to draw blood in non-emergency situations. The questions in this case are whether, under § 724.017 of the Transportation Code, Lopez was "emergency medical services personnel" and, if so, whether that fact renders her unable to be a "qualified technician" authorized to take blood specimens

in driving-while-intoxicated cases. After reviewing Lopez's job duties, we hold that she was not "emergency medical services personnel" and that she was a "qualified technician" within the meaning of the statute. We reverse the judgment of the court of appeals.

## I. BACKGROUND

### A. The Arrest and Trial Court Ruling

The basic facts of this case are undisputed. On January 26, 2011, appellant was involved in a vehicle accident and was arrested for driving while intoxicated. One of the other people involved in the accident was taken to the hospital. Because of this,[1] without the police obtaining a warrant, appellant was taken to a hospital so that a mandatory, involuntary blood specimen could be taken. There, appellant's blood was drawn by Rachel Lopez, an employee of the hospital and an Emergency Medical Technician-Intermediate ("EMT-I"). Appellant's blood-alcohol content was 0.23.

Appellant moved to suppress the results of the blood test, arguing that Lopez was not a person authorized by § 724.017 of the Transportation Code to take a blood specimen. Specifically, appellant contended that Lopez was not a "qualified technician" within the meaning of the statute because she was part of the hospital's "emergency medical services personnel." Section 724.017(a) provides:

> Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.

---

[1] *See* TEX. TRANSP. CODE ANN. § 724.012(b)(1)(C).

Section 724.017(c) says:

> In this section, "qualified technician" does not include emergency medical services personnel.

A hearing was held on the motion, and Lopez testified.

Following the hearing, the trial court issued findings of fact and conclusions of law, which included the following: 1) Lopez's testimony was truthful; 2) she was a licensed EMT-I; 3) she was employed by the hospital for approximately six years; 4) as an EMT-I, she was trained to draw blood, start IV's, do tracheotomies, and start intubation; 5) her duties in the hospital's emergency room were limited to drawing blood, but she was occasionally called to other parts of the hospital to start IV's; 6) she was also trained as an EMT-Basic, a lower paraprofessional license; 7) when taking blood for a law-enforcement officer she used a kit provided by the officer; and 8) appellant's blood was taken in a sanitary place, by one trained to do so, and in a reasonable manner.

The transcript of the proceedings established that Lopez's primary duty at the hospital was drawing blood. Lopez conducted anywhere from fifty to one-hundred blood draws per day, and she had drawn blood during the entire time she was employed at the hospital. She maintained her own office at the hospital where she conducted the blood draws. Lopez was familiar with and explained the process by which a blood specimen is taken in driving-while-intoxicated cases when requested by a law-enforcement officer. Moreover, after the time Lopez drew appellant's blood but before the suppression hearing, the hospital instituted new policies that changed the job titles of some of its staff, including Lopez, whose job title

changed from EMT-I to Patient Care Technician, Level 1. This change in job title required no additional training or duties.

The trial court never explicitly concluded that Lopez was a "qualified technician" under the statute, nor was there any express testimony from Lopez to that effect. The trial court denied appellant's motion to suppress. Following that denial, appellant pled guilty to driving while intoxicated and was sentenced to the Harris County Jail for one-hundred eighty days, probated for eighteen months.

## B. Court of Appeals's Opinion

The court of appeals reversed the trial court's judgment and remanded the case for a new trial.[2] It held that the language of § 724.017 was plain, and it clearly excluded Lopez, an EMT-I, from being a qualified technician able to take a blood specimen from appellant.

The court stated that it was troubled by the fact that the statute excluded emergency medical services personnel such as Lopez, considering that she was "more qualified to take a blood specimen than some other non-emergency medical services personnel who have been deemed to be 'qualified technicians' under Section 724.017(a)."[3] The court nevertheless concluded that, notwithstanding its undesirable consequences in particular cases, because the statute laid out a bright-line rule, it did not produce an absurd result that the legislature could

---

[2] *Krause v. State*, 368 S.W.3d 863, 864 (Tex. App.—Houston [14th Dist.] 2012, pet. granted).

[3] *Id.* 867 (citing cases).

not possibly have intended.[4]   Ultimately, the court reasoned that anyone licensed and titled as an EMT-I, who works in an emergency room, and is trained in providing emergency services, is unambiguously excluded by the statute, no matter his qualifications to take blood specimens.[5]

Concluding that the statute was plain in its meaning, the court of appeals stated that resort to legislative history was unwarranted.[6]   It nevertheless went on to discuss the legislative history of the statute to show that reliance on it by the State was not helpful in any event.[7]   The State had argued that a statement in the bill analysis indicated that emergency medical services personnel were excluded so that blood draws taken in ambulances would not be considered to have been taken in a sanitary place.  Rejecting the State's reliance on this part of the legislative history, however, the court of appeals reasoned that if the legislature had "wanted to prevent blood draws from being conducted in certain locations, it could have expressed that intent clearly in the statute without categorically excluding an entire class of medical services personnel."[8]

---

[4] *Id.*

[5] *Id.* at 867.

[6] *Id.* at 869.

[7] *Id.* at 869-70.

[8] *Id.* at 869.

## II. ANALYSIS

### A. Standard of Review and Principles of Statutory Construction

Because the historical facts are not disputed, and because statutory construction is a question of law, we review the trial court's ruling on the motion to suppress *de novo*.[9] When interpreting the meaning of a statute, we seek to effectuate the collective intent of the legislators who enacted the statute.[10] However, if the text of the statute is ambiguous or would lead to absurd consequences that the legislature could not possibly have intended, we may consider extra-textual sources, such as the legislative history and the consequences of a particular construction.[11]

### B. Deciphering the Text of the Statute

Lopez's job title was "EMT-I" but her job did not involve emergencies. Her job was that of a phlebotomist, which is a technician who draws blood. Moreover, while an EMT-I is defined as emergency services personnel for purposes such as travel reimbursement, that definition is not applicable to § 724.017.[12]

Two courts of appeals have held that phlebotomists are "qualified technicians" within

---

[9] *Mahaffey v. State*, 364 S.W.3d 908, 912-13 (Tex. Crim. App. 2012).

[10] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[11] *Id.*; *see also* TEX. GOV'T CODE ANN. § 311.023(3), (5).

[12] *See, e.g.*, GOV'T CODE § 660.209; *see also Ex parte Ruthart*, 980 S.W.2d 469, 472 (Tex. Crim. App. 1998) ("We will not extend a definition beyond the chapter or article to which it is expressly limited.").

the meaning of § 724.017, provided that their qualifications are established on the record.[13]

In *Torres v. State*,[14] the defendant was charged with driving while intoxicated and his blood was drawn by a phlebotomist on staff. Implicit in the court of appeals's decision is a conclusion that a phlebotomist is a technician within the meaning of the statute.[15]

And in *State v. Bingham*,[16] the defendant was arrested for driving while intoxicated and taken to a hospital where a phlebotomist drew his blood. A blood test showed he was over the legal blood-alcohol limit. The court of appeals concluded that the phlebotomist was a qualified technician within the meaning of the statute and stated, "The common-sense interpretation of the term 'qualified technician,' . . . must include a phlebotomist who a hospital or other medical facility has determined to be qualified in the technical job of . . . phlebotomy, i.e., the drawing of blood."[17]

The record in this case shows that Lopez's primary duties were that of a phlebotomist and that she was qualified to be so. Lopez was trained to draw blood, and her primary duty

---

[13] *See Cavazos v. State*, 969 S.W.2d 454, 456 (Tex. App.—Corpus Christi 1998, pet. ref'd) (holding that the State failed to meet its burden of establishing that the phlebotomist that took the defendant's blood was a qualified technician because no one testified regarding the phlebotomist's qualifications, and no other evidence was offered to establish that the blood was drawn by someone the hospital considered qualified to perform that task).

[14] 109 S.W.3d 602 (Tex. App.—Fort Worth 2003, no pet.).

[15] *Id.*

[16] 921 S.W.2d 494 (Tex. App.—Waco 1996, pet. ref'd).

[17] *Id.* at 496.

at the hospital for the six years she was employed there was to draw blood. Lopez took anywhere between fifty to one-hundred blood draws *per day*, and she maintained her own office at the hospital to do exactly that. When asked if drawing blood was part of her "daily chore[s]" at the hospital, Lopez replied, "Yes, ma'am. It's all I do."[18] Lopez also explained the procedure used to take blood specimens when directed to do so by police officers in driving-while-intoxicated cases, and she affirmed that she knew how to use the kit and equipment provided by the police officers to take such specimens. Lopez was qualified within the meaning of the statute.

The record also confirms that, functionally, Lopez was not emergency medical services personnel. It is true that Lopez had training in general emergency procedures. She also was licensed as an EMT-I and had that title at the hospital. But that training and her license and title had little to do with what she *actually did* at the hospital, which was almost exclusively drawing blood. Her new title of Patient Care Technician, Level 1, required no additional training or duties and is substantively indistinguishable from her previous position. From the perspective of the hospital, Lopez was not treated as an EMT-I or part of its emergency medical services personnel, but instead as a *de facto* phlebotomist. Because Lopez did not function as emergency services personnel, § 724.017(c) and its restrictions on emergency services personnel are not applicable in this case.

---

[18] At another point in her testimony, Lopez also stated that she takes urine samples and starts IV's. But throughout her testimony, Lopez said that her primary duty at the hospital is taking blood samples.

## C. *State v. Laird* is Inapplicable

The court of appeals relied heavily on *State v. Laird*[19] for its holding. We are not bound by *Laird*, a court of appeals opinion, but because of its influence on the court below we address its applicability to this case.

In *Laird*, the defendant was charged with intoxication manslaughter and failure to stop and render aid after he struck and killed a pedestrian with his truck.[20] A responding police officer took Laird to an emergency room to have his blood drawn.[21] Laird refused to consent to the blood draw, and, as a result, the emergency-room physicians refused to take a specimen.[22] The officer was then instructed by his superior to take Laird to the central fire station where a paramedic would take a blood sample.[23] The officer did so and Laird again refused to comply.[24] This time, however, another officer swept Laird's feet from under him, he fell to the ground, and he was pinned down by the officers on the floor of the fire station while the paramedic took the blood sample.[25] The trial court granted Laird's motion to

---

[19] 38 S.W.3d 707 (Tex. App.—Austin 2000, pet. ref'd).

[20] *Id.* at 710.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

suppress, and the court of appeals affirmed.[26]

In spite of superficial similarities, *Laird* is inapplicable to the instant case. It is true that the court in *Laird* rejected the idea that a paramedic in a hospital could be considered a qualified technician. But that observation had nothing to do with the facts in *Laird*, so it was merely *dicta*.

Furthermore, even if the paramedic in *Laird* could be said to have been qualified under § 724.017, the blood draw still would have been inadmissible under the statute because of where it was taken. The statute requires that the blood specimen be taken in a "sanitary place." The specimen in *Laird* was taken on the floor of a fire station, a place so obviously not sanitary within the meaning of the statute that it would need little discussion to conclude that the statute was not complied with.

### III. Conclusion

The court of appeals was mistaken to conclude, in spite of its misgivings, that Lopez was excluded from taking a blood specimen in this case. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Delivered: May 8, 2013
Publish

---

[26] *Id.* at 711, 715.