ACCEPTED
03-14-00774-CV
7568136
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/27/2015 5:13:19 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00774-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/27/2015 5:13:19 PM
JEFFREY D. KYLE
Clerk

TEXAS STATE BOARD OF VETERINARY MEDICAL EXAMINERS AND
NICOLE ORIA, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR

*Appellants*,

v.

ELLEN JEFFERSON, D.V.M.

*Appellee*.

On Appeal from the 250th Judicial District Court
of Travis County, Texas

**BRIEF OF AMICUS CURIAE TEXAS FARM BUREAU**

James D. Bradbury
State Bar No. 02814500
Courtney Cox Smith
State Bar No. 24045711
JAMES D. BRADBURY, PLLC
9442 Capital of Texas Hwy N
Arboretum Plaza 1, Suite 500
Austin, Texas 78759
Telephone: 512-343-3626
jim@bradburycounsel.com
ccox@bradburycounsel.com

**ATTORNEYS FOR AMICUS CURIAE**

# IDENTITY OF PARTIES AND COUNSEL

**Appellants/Cross-Appellees/Defendants:**

Texas State Board of Veterinary Medical Examiners and Nicole Oria, In Her Official Capacity as Executive Director

**Appellants' Counsel:**

Andres Lutostanski
State Bar No. 24072217
Ted A. Ross
State Bar No. 24008890
Office of the Attorney General of Texas
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711
Telephone: 512-475-4200
Andrew.lutostanski@texasattorneygeneral.gov
Ted.ross@texasattorneygeneral.gov

**Appellee/Cross-Appellant/Plaintiff:**

Ellen Jefferson, D.V.M.

**Appellee's Counsel:**

David F. Brown
State Bar No. 03108700
David P. Blanke
State Bar No. 02453600
Ewell, Brown & Blanke, LLP
111 Congress Ave., 28th Floor
Austin, Texas 78701
Telephone: 512-457-0233
dbrown@ebblaw.com
dblanke@ebblaw.com

Ryan Clinton
State Bar No. 24027934
Davis, Gerald & Cremer, P.C.
111 Congress Ave., Suite 1660
Austin, Texas 78701
Telephone: 512-537-9938
rdclinton@dgclaw.com

**IDENTITY AND STATEMENT OF INTEREST OF AMICUS CURIAE**

Texas Farm Bureau is a Texas non-profit membership corporation committed to the advancement of agriculture and prosperity for rural Texas. Founded in 1933, Texas Farm Bureau has over 500,000 member families and is associated with 206 organized county Farm Bureau organizations across the state. Texas Farm Bureau and its members—who are farmers, growers, and producers—believe the preservation of certainty in the application of rules and statutes and the autonomy of farmers, growers, and producers to manage and care for their livestock and farms is of critical importance to the strength of the agricultural economy in Texas. The "owner exemption" to the Veterinary Licensing Act is a key provision heavily relied upon by agricultural operations throughout Texas, and preservation of this exemption is of significant concern to Texas Farm Bureau and its members. Texas law has long deferred to private property rights and interests. The decision of the trial court erodes and threatens the owner exemption and in so doing, imperils those that own and manage livestock in Texas.

The Texas Farm Bureau is not a party to the case and will pay all attorney's fees incurred in the preparation of this amicus curiae brief. The Texas Farm Bureau certifies that copies of the Brief have been or will be served on all parties. The Texas Farm Bureau respectfully requests the opportunity to present these policy concerns affecting agriculture.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................ii

IDENTITY AND STATEMENT OF INTEREST OF AMICUS CURIAE .......... iii

TABLE OF CONTENTS.............................................................................. iv

INDEX OF AUTHORITIES......................................................................... vi

STATEMENT OF THE CASE....................................................................... 1

ISSUES PRESENTED ................................................................................. 2

STATEMENT OF FACTS ............................................................................ 3

SUMMARY OF THE ARGUMENT .............................................................. 4

ARGUMENT .............................................................................................. 6

    I.    The Trial Court's decision limits the "owner exemption," creating uncertainty and ambiguity and threatening the continued protection of private property rights in Texas. ................................................. 6

        A. The Texas Legislature expressly intended the "owner exemption" to be absolute and outside the authority and jurisdiction of the Board. ............................................................................. 6

        B. The "owner exemption" is a critical component of the agricultural industry and must be protected. ................................................ 9

        C. The trial court's ruling grants discretion to the Board in contravention of the Legislature's clearly expressed intent. ......... 11

    II.    The Trial Court erred by requiring Dr. Jefferson to exhaust her administrative remedies and creating new Board jurisdiction where none exists. ........................................................................... 13

    III.    The Trial Court erred by allowing and encouraging the Board to act outside its statutory authority. .......................................................... 16

CONCLUSION AND PRAYER ................................................................... 17

CERTIFICATE OF COMPLIANCE WITH TRAP 9.4(i) ..................................... 18

CERTIFICATE OF SERVICE ............................................................. 19

# INDEX OF AUTHORITIES

**Texas Cases**

*City of Round Rock v. Whiteaker*, 241 S.W.3d 609 (Tex. App.—Austin 2007, pet. denied)..................................................................................................13, 16

*City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681 (Tex. 1983)......17

*Pistole v. State*, 150 S.W. 618 (Tex. Crim. App. 1912)..........................................14

*Subaru of Am. Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex. 2002)...................................................................................................13

*Tara Partners, Ltd. v. City of S. Hous.*, 282 S.W.3d 564 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ..............................................................17

*Tex. Bd. of Chiropractic Examiners v. Tex. Med. Ass'n*, 375 S.W.3d 464 (Tex. App.—Austin 2012, pet. denied) .............................................................14

*Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780 (Tex. 1978) .............14

**Texas Statutes**

Tex. Occ. Code Ann. § 801.002..........................................................................7, 8

Tex. Occ. Code Ann. § 801.004.......................................................... 1, 6, 8, 12, 14

Tex. Occ. Code Ann. § 801.251.................................................................................8

**Texas Rules and Regulations**

22 Tex. Admin. Code § 573.72..................................................................................1

22 Tex. Admin. Code § 573.80..................................................................................1

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

## STATEMENT OF THE CASE

This case centers on private property rights in Texas, and specifically, on the long-recognized right of agriculture owners to manage the care and treatment of their animals free of state regulation under the Veterinary Licensing Act. Appellants are the Texas Board of Veterinary Medical Examiners and its Executive Director (collectively, the "Board") who are seeking to regulate the care and treatment of small shelter animals in contravention of the "owner exemption" of Tex. Occ. Code Ann. § 801.004(1). Appellee is Dr. Ellen Jefferson ("Dr. Jefferson") who is an animal shelter veterinarian and the subject of the Board's action.

The Honorable Gisela D. Triana held a combined hearing on the Board's Plea to the Jurisdiction and a Trial on the Merits in the 250th Judicial District Court of Travis County, Texas on August 4, 2014. The trial court granted the Plea to the Jurisdiction in part, dismissing Dr. Jefferson's claims for declaratory judgment on the ground that she must exhaust administrative remedies. The trial court entered judgment declaring that the Board's rules in 22 Tex. Admin. Code §§ 573.72 and 573.80(2) are contrary to the "owner exemption" in Tex. Occ. Code Ann. § 801.004(1) and therefore invalid, and further declared that the Board had the authority to enforce other laws concerning a veterinary license notwithstanding the

1

"owner exemption." The trial court remanded the case to the Board for further proceedings. Both parties seek review of the trial court's decision before this Court.

## ISSUES PRESENTED

The trial court erred in placing the continued strength and existence of the "owner exemption" to the Veterinary Licensing Act in peril. The trial court's rulings undermine the "owner exemption" creating uncertainty and ambiguity and threatening the continued protection of private property rights in Texas. The Texas Legislature long ago recognized the importance of the "owner exemption" to Texas citizens, particularly agricultural operators and producers. Texas producers should have confidence that the "owner exemption" is not open to the mercy of the Board or this trial court regarding a specific exemption created by the Texas Legislature.

The trial court erred by limiting the "owner exemption," thereby wrongly expanding the Board's authority to act and creating uncertainty and ambiguity in the law. The trial court further erred in its unlawful expansion of limited agency jurisdiction by requiring that Dr. Jefferson must exhaust administrative remedies before challenging the Board's *ultra vires* action against her. Finally, the trial court erred by ignoring the clearly expressed intent of the Texas Legislature to limit the Board's authority and jurisdiction when the court granted the Board discretionary authority to regulate notwithstanding the "owner exemption."

2

**STATEMENT OF FACTS**

This case stems from the actions of Dr. Jefferson, a veterinarian, who founded and operated a "No-Kill" animal shelter in San Antonio, Texas called San Antonio Pets Alive ("SAPA"). Dr. Jefferson's role in SAPA was substantial, serving as its Executive Director, lead veterinarian, and responsible for SAPA's daily affairs. (2.RR.124, 2.RR.171, 3.RR.PX43:EJ001539) Dr. Jefferson relied upon the "owner exemption" to the Texas Veterinary Licensing Act to provide veterinary services to the animals in the shelter and to care and treat the animals. (3.RR.PX18:EJ000638; 2.RR.144-45) It had long been understood that animals not claimed by their owners within the applicable hold period (often three days) become property of the shelter. In other words, the shelter becomes the owner of the animals. (3.RR.PX18:EJ000638) As such, SAPA could rely on the "owner exemption" to care for and treat its animals without intervention, oversight, or regulation by the Board.

On December 27, 2013, the Board brought charges against Dr. Jefferson alleging wrongdoing with respect to a dog owned by SAPA. (1.CR.117) Dr. Jefferson, believing the Board's action to be illegal, contrary to the long-recognized "owner exemption" to the Act, and outside the scope of statutory authority granted to the Board by the Legislature, filed a lawsuit in the trial court of Travis County, Texas seeking declaratory relief that the Board's conduct was unlawful and *ultra vires* and seeking temporary and permanent injunctive relief to stop the Board's

3

action. (1.CR.4-21) The Board challenged Dr. Jefferson's lawsuit through a Plea to the Jurisdiction. (1.CR.47, 133-35) After a hearing and trial on the merits, the court granted the Plea to the Jurisdiction in part and denied it in part, invalidating two of the Board's rules. (1.CR.855.857) Because the court ruled that it did not have jurisdiction to consider the Board's authority to prosecute Dr. Jefferson, the Board's action against Dr. Jefferson was remanded to the State Office of Administrative Hearings. After a hearing, the Administrative Law Judge determined that Dr. Jefferson was acting under the "owner exemption" and that her actions were exempt from the Board's jurisdiction. *See* Ex. E to Brief of Appellant Ellen Jefferson, D.V.M.

## SUMMARY OF THE ARGUMENT

It is well-settled in Texas that the care and treatment of animals by their owners is exempt from regulation under the Veterinary Licensing Act. Although this case contemplates the "owner exemption" in the context of shelter based small animals and pets, the scope of the exemption is far-reaching. For decades, Texas farmers and ranchers have relied on the "owner exemption" to care for and treat their livestock herds. The continued strength and continuity of this exemption will ensure that agricultural operators and producers are able to continue in the efficient and cost-effective care and treatment of their animals. The implications of this case are therefore significant and far-reaching.

4

The trial court's ruling erodes the "owner exemption," creating uncertainty and ambiguity and placing the continued existence of the exemption at risk by converting a once clear and absolute exemption to a discretionary and selectively applied exemption. The trial court's decision further improperly expands the authority and power of the Board beyond the statutory authority granted by the Texas Legislature. The trial court wrongly enlarges agency jurisdiction where no such jurisdiction exists or was ever intended by the Legislature.

Under the trial court's rulings, the Board could opt to override the "owner exemption" if it chooses to do so. In that case, agricultural operators and producers may be required to call, wait and pay for a veterinarian for any care or treatment of their herd, activities currently conducted by the farmer himself. Further, livestock operators would be cast into regulatory uncertainty over whether they can rely on the "owner exemption" to be absolute. The consequences for the agricultural industry if the "owner exemption" is diminished would be dire. In a state with over 19 million head of cattle and the top producer of beef cattle in the United States, Texas livestock producers daily rely on the certainty of the "owner exemption." The Legislature intended this exemption to be and remain absolute. Without question, the Board does not have authority or jurisdiction to regulate owners of animals in the State of Texas. The trial court's rulings undermining the "owner exemption" should not stand.

# ARGUMENT

I.     **The Trial Court's decision limits the "owner exemption," creating uncertainty and ambiguity and threatening the continued protection of private property rights in Texas.**

Texas law has long recognized and closely guarded private property rights from the unwarranted and unintended regulatory reach of state agencies. Among these private property rights is the recognition that animals are the property of their owner. Even more so where production livestock is concerned. The Texas Legislature affirmed the security of this right by creating a clear and absolute exception to the Veterinary Licensing Act and placing the authority for the treatment and care of an animal in the hands of the owner. Tex. Occ. Code Ann. § 801.004(1). Notably, the legislature did not empower the Board with discretion to selectively enforce the "owner exemption." The statute makes clear that the "owner exemption" applies even against the wishes and intentions of the Board. *See id*. (stating that the Veterinary Licensing Act does not apply "in any manner" to "the owner of the animal").

   A.     **The Texas Legislature expressly intended the "owner exemption" to be absolute and outside the authority and jurisdiction of the Board.**

The Veterinary Licensing Act is expansive in application. The Act broadly defines "veterinary medicine" as including "veterinary surgery, reproduction and obstetrics, dentistry, ophthalmology, dermatology, cardiology, and any other

6

discipline or specialty of veterinary medicine." Tex. Occ. Code Ann. § 801.002(7).

The Act goes on to describe activities considered to be the "practice of veterinary

medicine" as:

> (A) the diagnosis, treatment, correction, change, manipulation, relief, or prevention of animal disease, deformity, defect, injury, or other physical condition, including the prescription or administration of a drug, biologic, anesthetic, apparatus, or other therapeutic or diagnostic substance or technique;
>
> (B) the representation of an ability and willingness to perform an act listed in Paragraph (A);
>
> (C) the use of a title, a word, or letters to induce the belief that a person is legally authorized and qualified to perform an act listed in Paragraph (A); or
>
> (D) the receipt of compensation for performing an act listed in Paragraph (A).

*Id*. § 801.002(5). The Act, by its own language, is intended to encompass a large

swath of persons, activities, procedures, and circumstances.

Although the Texas Legislature intended the Act to be broad in application, it

did not intend the Act to be without exception. The Legislature carved out certain

exemptions over which the Act would have no application and the Board would have

no jurisdiction. At the forefront of these exemptions is the "owner exemption,"

which the Legislature created when it determined the Act "does not apply" to:

> the treatment or care of an animal *in any manner* by the owner of the animal, an employee of the owner, or a designated caretaker of the animal, unless the ownership, employment, or designation is established with the intent to violate this chapter.

*Id*. § 801.004(1) (emphasis added). Lest there be any question about the intended breadth of the exemption, the Legislature made clear that the act did not apply to owners "in any manner." *Id*.; *see also* Tex. Occ. Code Ann. § 801.251 (excepting exemptions of § 801.004 (including the "owner exemption") from requirement to obtain a license for practice of veterinary medicine). Owners are therefore entirely exempt from regulation by the Board. There is no question or discretion.

The activities encompassed by the "owner exemption" are numerous and varied, ranging from diagnosis and treatment to disease prevention and covering a wide array of specialties from surgery to reproductive issues to dermatology and beyond. *See id*. §§ 801.002(5), (7). The Board itself has recognized the absolute exemption for owners when it said, "[u]nder Texas law, an animal's owner or a caretaker designated by the owner can perform acts of veterinary medicine on the animal without involving a veterinarian and without concern for establishing a veterinarian-client-patient relationship, because *the owners and caretakers are exempt from the Veterinary Licensing Act.*" Texas State Board of Veterinary Medical Examiners, *Board Notes,* Fall 2012, at 2. The scope of activities allowed, therefore, under the "owner exemption" is broad, and for those who care for and raise animals as a business, the continued protection of the exemption is critical.

Although the present case involves shelter animals, the proper construction and application of the "owner exemption" is essential and must be done in light of

8

the substantial industry for which it was created, Texas livestock production. Texas is not alone in exempting owners from veterinary regulation. Forty-one other states plus the District of Columbia recognize some form of the "owner exemption." *See* AVMA State Legislative and Regulatory Department, *Scope of Practice: Complementary and Alternative Veterinary Medicine (CAVM) and Other Practice Act Exemptions* (last updated May 2015), *available at* https://www.avma.org/Advocacy/StateAndLocal/Pages/sr-cavm-exemptions.aspx. The threatened limitation of this exemption poses significant consequences for the State of Texas.

**B.    The "owner exemption" is a critical component of the agricultural industry and must be protected.**

Agricultural owners and operators have long relied on the "owner exemption" for efficient and effective care and treatment of their livestock. It forms a key aspect of the industry. With over 248,800 farms and ranches spanning 130.2 million acres, Texas leads the nation in cattle, sheep, and goats. Tex. Dept. of Agriculture, *Texas Ag Stats*, *available at* https://www.texasagriculture.gov/About/TexasAgStats.aspx. Animal production in Texas is a multi-billion-dollar industry. In 2012, cattle alone brought in $10.5 billion. Tex. Dept. of Agriculture, *Texas Ag Stats*, *available at* https://www.texasagriculture.gov/About/TexasAgStats.aspx. Milk and broiler sales brought an additional $3.5 billion into the Texas economy. *Id*.

9

At the beginning of 2015, Texas producers held an inventory of nearly 19 million cattle, nearly 1 million goats, over 700,000 sheep, over 800,000 hogs, and nearly 600 million chickens. Nat'l Agricultural Statistics Serv., U.S. Dept. of Agriculture, *2014 State Agriculture Overview*, at 1, *available at* https://www.nass.usda.gov/Quick_Stats/Ag_Overview/stateOverview.php?state=T EXAS. These numbers don't even account for the thousands of smaller farms keeping horses and smaller herds who equally rely on the "owner exemption" for the care and treatment of their animals.

The importance of the "owner exemption" extends, therefore, well beyond the issue of the care and treatment of shelter animals. The continued strength and breadth of this exemption is critical to agricultural operators and producers, and it is a concept that is long-recognized in the agricultural community. Whether a farmer with a small herd of horses or a large-scale operator with thousands of beef cattle or chickens, agricultural operators for years have daily relied on this exemption as they diagnosis, treat, and care for their animals. The "owner exemption" allows these operators to care for their animals in real-time, diagnosing, administering prescription medications, performing certain procedures to prevent disease, healing an injury, or relieving a physical condition.

Perhaps the simplest example is a ranch owner finding a sick calf or injured cow in the pasture, as happens every day on farms and ranches across Texas. Under

the "owner exemption," the owner and his employees can quickly diagnose the problem and treat it with medicine or other veterinary practices in the vast open range. There is neither the time, the money, nor the need to drive to the nearest town, call a veterinarian, and wait for a few days for a ranch call by the veterinarian. Without the "owner exemption" it would be an unworkable system. There simply are not enough large animal veterinarians in Texas to treat the massive herds.

The successful history of livestock production in Texas depends upon the independent and experienced judgment of producers. Without the full protection of the "owner exemption," livestock owners could not operate profitably as they would be forced to call, wait, and pay a veterinarian for every potential animal ailment or condition. The relationship between the "owner exemption" and agriculture, therefore, is long-running and essential to the future economic health and success of the industry.

### C. The trial court's ruling grants discretion to the Board in contravention of the Legislature's clearly expressed intent.

The Texas Farm Bureau supports the portion of the trial court's judgment that invalidates two of the Board's rules that attempted to undermine the magnitude of the "owner exemption." The trial court, however, places the exemption at risk by ruling that the Board can selectively enforce the Veterinary Licensing Act against a veterinarian notwithstanding the "owner exemption." Under some interpretations, the trial court's ruling could give the Board authority to enforce the Act or "ensure

compliance" with the Act so long as it gives "proper and due regard for the ownership exemption." (1 CR.856) This new "discretionary" authority extends far beyond that given to the Board by the Texas Legislature, which intended that owners would not be subject to regulation "in any manner." *See* Tex. Occ. Code Ann. § 801.004(1). It in fact rewrites the statute. And it is the Texas Legislature alone that determined the private property rights of animal owners should be protected and be absolutely exempted from regulation by the Board. Instead, the Legislature found it insufficient for the Board to merely give "due regard" to owners in the care and treatment of their animals. The Legislature removed this entire category of care and treatment of animals by their owners from the force and effect of the Act. Livestock producers have relied for decades on the Legislature's clear meaning. The trial court's ruling oversteps and provides new-found authority to the Board where no such authority exists or was ever intended.

The Board contends that its rules and efforts against Dr. Jefferson do not alter the "owner exemption" as a whole but addresses certain situations that are within its statutory authority to regulate. In reality, the Board's rules combined with the trial court's ruling in this case, are chipping away at the "owner exemption" in favor of a discretionary case-by-case regulatory environment. The Board's actions risk focusing on the narrow area of small animal care while jeopardizing the substantial

and well-operating private livestock industry. Erosion of part of the exemption, however, threatens the whole.

This is not a case dealing with a small subset of shelter animals. The rulings in this case stand to impact all owners of animals, including the thousands of Texas farmers and ranchers who daily rely on the "owner exemption" to manage their herds, provide a safe food supply, and operate a profitable business. At best, the court's ruling injects uncertainty and ambiguity into the process, and at worst, it erodes the "owner exemption" entirely, threatening private property rights and ignoring the clear expressed intent of the Legislature. The unique facts and circumstances of this case should not be read to interpret or diminish the Legislature's grant of a complete exemption to the owners of livestock in Texas. The trial court's ruling should be reversed.

## II. The Trial Court erred by requiring Dr. Jefferson to exhaust her administrative remedies and creating new Board jurisdiction where none exists.

The trial court's requirement that Dr. Jefferson exhaust her administrative remedies before challenging the Board's authority to regulate is patently wrong. Administrative agencies may exercise only those powers the Legislature, through statutory language, confers upon them, and this authority cannot be expanded by courts or the agencies themselves. *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 641 (Tex. App.—Austin 2007, pet. denied) (quoting *Subaru of Am. Inc. v.*

*David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002)). When an agency is acting beyond its statutory authority, as it is alleged in this case, the doctrine of exhaustion of administrative remedies does not apply. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978).

The Board has no authority to regulate or exercise jurisdiction over owners of livestock or animals in Texas. Tex. Occ. Code Ann. § 801.004(1). Further, the Board's own interpretation of its statutory authority or jurisdiction is given *no deference* when the statute in question is unambiguous. *See Tex. Bd. of Chiropractic Examiners v. Tex. Med. Ass'n*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. denied). The intent of the Texas Legislature is unequivocal with respect to the "owner exemption." The Board has no authority or jurisdiction over Dr. Jefferson or any other owner of animals or livestock in the State of Texas, and the trial court's attempt to vest the Board with jurisdiction or otherwise expand its authority is patently wrong. *See Pistole v. State*, 150 S.W. 618, 621 (Tex. Crim. App. 1912) (reasoning that "[i]n some instances this court might materially differ with the Legislature about the policy of certain legislation, but, whenever the Legislature has the right itself to pass upon the question of policy, this court cannot substitute its judgment for that of the Legislature. The Legislature, and not this court, knows, or is, so far as this court is concerned, conclusively presumed to know, the differences, if any, of the various persons who have heretofore practiced or who may hereafter

14

seek to practice veterinary medicine or surgery, and would better know than this court the situation of such persons so as to make the proper distinction between them as classes, not as individuals, in authorizing or prohibiting them from practicing such profession").

As with the "owner exemption," the implications of the court's ruling extend far beyond the facts of this case. The trial court's ruling goes against long-standing precedent—precedent that seeks to protect the citizens of Texas against overstepping by administrative agencies. The citizens and businesses that make up Texas should not be required to endure the time, expense, and complexity of an administrative hearing before they may directly challenge the authority of an agency to bring the action at issue. Dr. Jefferson, and others who stand in her shoes in the future, should be able to determine the authority of the agency at issue in the courts before being compelled to endure a long and expensive administrative process. Absent such an early, clear right to challenge an agency's *ultra vires* exercise of power, the agency inherits additional power and authority. Landowners and operators will be left subject to a process that the Legislature never endorsed or intended. The trial court's ruling ignores this long-standing precedent on agency jurisdiction and therefore, should not stand.

**III.    The Trial Court erred by allowing and encouraging the Board to act outside its statutory authority.**

Through the lens of Texas policy of clearly-defined and limited governmental reach, the court's rulings and encouragement of the Board to act outside its statutory authority sets a remarkable and dangerous precedent. The Board's overstepping has not gone without notice as several members of the Texas Legislature expressed dismay at the Board's actions in this case and beyond. Senator Charles Perry of Lubbock in particular chastised the Board for being "so prescriptive that people are paralyzed to do their job" and criticizing the Board for failing to recognize the big picture. *See* Texas Senate Committee on Agriculture, Water & Rural Affairs hearing on April 27, 2015.

Although in this case it is the Veterinary Board that is overstepping its authority, in another case it may be the Texas Commission on Environmental Quality, the Texas Department of Agriculture, the Railroad Commission of Texas, or the Public Utility Commission of Texas—each of which can have significant impacts on agricultural operators and producers and average citizens alike. The Texas Legislature and it alone has the power to confer or limit the authority of administrative agencies. *See Whiteaker*, 241 S.W.3d at 641. It is an important part of the checks and balances that ensure the fair and balanced operation of government.

16

Agencies tend towards the expansion of their own authority. *See, e.g., Tara Partners, Ltd. v. City of S. Hous.*, 282 S.W.3d 564, 571 (Tex.App.—Houston [14th Dist.] 2009, pet. denied); *see also City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 684 (Tex. 1983). The surest way to silently broaden the reach of Texas agencies is to compel citizens and businesses to endure and submit to regulation before challenging its legal authority. The expenditure of time and money will place the power with the agencies. Endorsing the expansion of the Board's action in this case beyond its statutory authority opens the door to other agencies following suit. If unchecked, protections for Texas citizens that have long been protected and preserved by the Texas Legislature will be threatened. Private property rights will take a backseat to the will of administrative agencies.

## CONCLUSION AND PRAYER

This case extends far beyond the care and treatment of shelter animals in central Texas clinics. The continued strength of the "owner exemption"—an exemption long-relied upon by Texas farmers and ranchers in caring for their livestock herds—must be preserved without any judicial or agency exceptions. The erosion of this exemption would have a significant impact on a multi-billion-dollar industry that is not only the mythic history of Texas but also is a key component of the nation's food supply. The trial court's rulings that place the "owner exemption" in peril should not stand. The Texas Farm Bureau therefore respectfully prays that

this Court consider and protect the rights of Texas farmers and ranchers, affirm the trial court's invalidation of the Board's rules, and reverse the trial court's judgment as to all other rulings.

Respectfully submitted,

/s/ James D. Bradbury
James D. Bradbury
State Bar No. 02814500
Courtney Cox Smith
State Bar No. 24045711
JAMES D. BRADBURY, PLLC
9442 Capital of Texas Highway N
Plaza 1, Suite 500
Austin, Texas 78759
Telephone: 512-343-3626
Facsimile: 512-345-2924
jim@bradburycounsel.com
ATTORNEYS FOR AMICI CURIAE

## CERTIFICATE OF COMPLIANCE WITH TRAP 9.4(i)

This to certify that the foregoing Brief of Amici Curiae consisted of 3,795 words, in accordance with Texas Rule of Appellate Procedure 9.4(i)(2).

/s/ James D. Bradbury
James D. Bradbury

18

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of October, 2015, a true and correct copy of the foregoing document was served on all parties via electronic service provider and/or electronic mail:

Andres Lutostanski
State Bar No. 24072217
Ted A. Ross
State Bar No. 24008890
Office of the Attorney General of Texas
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711
Telephone: 512-475-4200
Andrew.lutostanski@texasattorneygeneral.gov
Ted.ross@texasattorneygeneral.gov

David F. Brown
State Bar No. 03108700
David P. Blanke
State Bar No. 02453600
Ewell, Brown & Blanke, LLP
111 Congress Ave., 28th Floor
Austin, Texas 78701
Telephone: 512-457-0233
dbrown@ebblaw.com
dblanke@ebblaw.com

Ryan Clinton
State Bar No. 24027934
Davis, Gerald & Cremer, P.C.
111 Congress Ave., Suite 1660
Austin, Texas 78701
Telephone: 512-537-9938
rdclinton@dgclaw.com

/s/ James D. Bradbury
James D. Bradbury